**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GINA POLO, individually and as Independent Administrator of the Estate of Daniel Paredes,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 15 C 3644** |
| **COOK COUNTY, THOMAS J. DART, RONALD F. LEVDORA, MD, ALI M. NAGIB, MD, CORRECTIONAL OFFICER STARKS, CORRECTIONAL OFFICER RAMIREZ, and JOHN DOES,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Daniel Paredes died while in the custody of the Cook County Department of

Corrections. Plaintiff Gina Polo, individually and as independent administrator of

Paredes's estate, has sued Cook County, Sheriff Thomas Dart, two correctional officers,

two physicians, and unnamed defendants identified as "John Does," alleging their

wrongful conduct caused Paredes's death. Polo asserts claims under 42 U.S.C. §

1983, the Illinois wrongful death statute, 740 ILCS 180/1, and for indemnification under

745 ILCS § 10/9-102. Defendants have moved to dismiss certain of Polo's claims for

failure to state a claim. Specifically, they argue that Polo has not sufficiently alleged a

*Monell* claim under section 1983 against defendants Dart and Cook County and that all

of the public employee defendants are immune from liability on her state law claims

under Illinois' Tort Immunity Act (TIA). Defendants also argue that the statute of limitations bars Polo's claims against the John Doe defendants. For the reasons set out below, the Court denies defendants' motion.

## Background

Paredes was arrested for unlawful delivery of a controlled substance on April 3, 2014. From then until May 14, 2014—the day of his death—he remained in custody at the Cook County Department of Corrections (CCDOC) and/or Cermak Hospital, which is located within the CCDOC complex. Polo alleges that Paredes was unable to walk without assistance and that prior to his arrest, a doctor had prescribed him a wheelchair "for unconditional use as a medical device." 2d Am. Compl. ¶ 30. Paredes also had several other previously diagnosed medical conditions for which he had been prescribed a variety of medications for pain relief, anxiety, and diabetes. Polo alleges that these prescriptions were valid during the entire time at issue in this case.

On April 6, 2014, doctors at Cermak Hospital prescribed Paredes a cane. Polo alleges that none of the defendants provided Paredes with a wheelchair or a prescription for one at that time. Nor did they provide him with a cane, even though the doctors at Cermak had prescribed one. Thus Paredes was required to walk unassisted.

On April 21, 2014, Paredes allegedly had an encounter with Dr. Levdora, Dr. Nagib and/or one or more John Doe defendants, during which he a requested a wheelchair. The physician defendants allegedly denied his request and told him he needed to walk. They also allegedly cancelled at least one of his medications.

On April 29, 2014, the physician defendants finally prescribed a wheelchair for Parades, though on May 1 they restricted his use of a wheelchair to long distances.

Polo maintains, however, that defendants continued to deny Paredes the use of a wheelchair even for long distances. Instead, correctional officers Starks and Ramirez, as well as unnamed John Doe defendants, allegedly carried Paredes to meet with his attorney or appear in court. When they did not carry him, they allegedly forced him to walk.

Polo also alleges that defendants refused to prescribe and/or dispense to Paredes his other prescription medications. Polo says that she complained to Sheriff Dart's office multiple times about Paredes's medical treatment at the CCDOC and Cermak. She expressed Paredes's need for his medication and a wheelchair to Dart's office, but this evidently had no effect.

During a court hearing in Paredes's criminal case on May 14, 2014, his attorney informed the judge that Paredes was essentially confined to his cell, because he could not ambulate without a wheelchair and defendants had refused to provide one. Judge Geary Kull, who was presiding over the court hearing, reduced Paredes's bond to $20,000 at that hearing. Polo posted the necessary ten percent of the bond amount. As a result, Paredes was scheduled for release later that day.

At some point after the hearing, but before 11:00 p.m. on May 14, 2014, Paredes told Polo that defendants had forced him to walk more than fifteen minutes that day without any assistance. Specifically, officers Ramirez and Starks allegedly refused to allow Paredes to use a wheelchair, forcing him to walk a long distance without any assistance. Several inmates urged the correctional officer defendants to provide Paredes with a wheelchair, but Starks allegedly exclaimed, "He ain't getting no wheelchair!" 2d Am. Compl. ¶ 49. At 11:00 p.m. on May 14, defendants transported

Paredes to St. Anthony's Hospital as a result of his health problems.  Sheriff's personnel called Polo to inform her, and Polo immediately went to St. Anthony's.  At 12:00 a.m., St. Anthony's staff informed Polo that Paredes was dead upon arrival to the hospital.

A Cook County probate judge appointed Polo as the representative of Paredes's estate on July 25, 2014.  She filed this lawsuit on April 24, 2015.  As a result of prior motions to dismiss, Polo has amended her complaint twice.  Defendants Dart and Cook County, the only named defendants at the time, moved to dismiss the first amended complaint for failure to state a claim.  Shortly thereafter, Polo filed a second amended complaint.  Defendants elected to have their motion to dismiss stand with respect to the second amended complaint.  The Court notes that as a result, the motion to dismiss does not address Polo's newly added claims against the four named physician and correctional officer defendants, who were not named in the first amended complaint.

### Discussion

To survive a motion to dismiss under Rule 12(b)(6), a complaint's factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In reviewing the sufficiency of a complaint on a Rule 12(b)(6) motion, the Court takes as true all well-pleaded factual allegations in the complaint and draws reasonable inferences from those facts in favor of the plaintiff.  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).  A court does not, however, accept as true legal conclusions or conclusory allegations that merely recite the elements of the party's claim.  *Id.*  In short, although a plaintiff is not required to make detailed factual allegations, her complaint must contain more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Rather, the plaintiff must

"provide some specific facts" to support the legal claims asserted in the complaint.  *Id.*

(citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).  And those factual allegations

must "plausibly suggest an entitlement to relief."  *Iqbal*, 556 U.S. at 680.

Defendants argue that:  1) Polo has failed to plead a sufficient *Monell* claim; 2)

the statute of limitations bars her claims against the John Doe defendants; and 3) the

Illinois Tort Immunity Act bars her state law claims against Dart, Cook County, and the

John Doe defendants.  The Court addresses each of the defendants' arguments in turn.

**1.** *Monell* **claim**

Defendants argue that Polo has failed to state a section 1983 *Monell* claim

against Sheriff Dart or Cook County.  Specifically, defendants argue that from the facts

alleged, no reasonable inference may be drawn that any policy or practice of the Sheriff

or County violated Paredes's constitutional rights.  They contend that Polo bases her

claim only on what allegedly happened to Paredes, which they argue is insufficient to

give rise to an inference of an unconstitutional policy or practice.  Finally, they argue

that Polo makes no allegation that can permit a reasonable inference that Paredes's

death was the result of a policy or practice.

Polo first asserted a *Monell* claim against the Sheriff and the County in the

original version of her complaint.  The Court indicated that earlier versions might be

insufficient because the claim appeared to be premised exclusively on unsupported

boilerplate language regarding the existence of a policy or practice.  Although some of

that language remains in Polo's second amended complaint, Polo has made

considerable additions to the fact section of the complaint, which she has incorporated into her *Monell* claim against the Sheriff and the County.

Municipalities[1] cannot be held vicariously liable for the acts of their employees under section 1983 via a *respondeat superior* theory. *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Rather, the plaintiff must establish the existence of 1) an express policy that, when enforced, causes a constitutional deprivation; 2) a persistent practice that, although not authorized by a written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or 3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See, e.g.*, *Phelan v. Cook Cty.*, 463 F.3d 773, 789 (7th Cir. 2006).

Polo points to both written and implied policies at the CCDOC as the driving force behind the deprivation of Paredes's constitutional rights. Specifically, she alleges that Cook County and Dart had written policies that limited inmates' use of prescribed medication and medical devices, including wheelchairs. She also alleges that Dart and Cook County had a persistent custom, practice or policy of failing to provide wheelchairs to inmates holding prescriptions or having an obvious need for a wheelchair. She makes a similar allegation regarding Dart and Cook County concerning their failure to provide inmates with prescribed medications.

---

[1] Actions against governmental employees in their official capacities are actually claims against the governmental entity for which they work. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Although it is not entirely clear, the Court assumes that Polo is suing Sheriff Dart in his official capacity. Therefore any discussion referring to "municipalities" applies to Dart as well.

At this point, the Court is assessing only the sufficiency of Polo's complaint, not her ability to prove her allegations. Based on the allegations Polo has made, one reasonably could infer that Paredes was forced to walk without assistance and had to go without his medication due to the defendants' alleged policies restricting the distribution of wheelchairs and medications. In addition, one reasonably could infer that practices that forced a detainee like Paredes to walk for fifteen minutes without assistance and to miss his prescribed medications led to his death. Accepting the facts in Polo's complaint as true—as the Court must do at this stage—she has stated a viable *Monell* claim against Cook County and Dart.

Defendants take issue with Polo's reliance on a report issued by the United States' Department of Justice in 2008—nearly six years before the events in this case accrued. In the report, the DOJ describes the results of a study that uncovered widespread violations of inmates' constitutional rights, including the failure to provide adequate medical care at the CCDOC and Cermak Hospital. Defendants argue that the letter has no probative value because of its age, and they also dispute the letter's factual allegations. The Court need not address the admissibility or weight of the DOJ letter at this stage. Even if the DOJ's letter is not considered, Polo's other allegations are sufficient to sustain her *Monell* claim at the pleading stage.

## 2. Statute of limitations on state law claims

Defendants argue that the state law claims against the John Doe defendants should be dismissed because the statute of limitations has run for any still-unnamed defendants. Under the Tort Immunity Act (TIA), a claim against a local government body or its employees must be brought within one year after the date the claim accrued.

745 ILCS 10/8-101.  The statute of limitations, however, is an affirmative defense.  An affirmative defense typically is not an appropriate ground on which to dismiss a complaint under Rule 12(b)(6), "because complaints do not have to anticipate affirmative defenses to survive a motion to dismiss."  *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).  "The mere presence of a potential affirmative defense does not render the claim for relief invalid," partly because "these defenses typically turn on facts not before the court at that stage in the proceedings."  *Brownmark Films, LLC. v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

The complaint does not include sufficient information establishing a limitations defense such that the John Doe defendants are entitled to dismissal under Rule 12(b)(6).  Indeed, without knowing who the John Does are, dismissal would be premature.  If and when they are named, they may assert the statute of limitations in an appropriate way.

**3.     Tort Immunity Act**

Defendants argue that the TIA bars them from liability for any and all conduct alleged in this case.  Polo retorts that the Court should not consider an immunity defense on a motion to dismiss. To support her argument, Polo cites a Seventh Circuit case from 2001, which said:

> Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate . . . .  Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal . . . and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint.

*Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001).  Although immunity is not always well-suited for consideration on a Rule 12(b)(6) motion to dismiss, courts can

consider it in some circumstances.  *Cf. Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915-16 (7th Cir. 2015) (claim of qualified immunity ).

The relevant portions of the TIA preclude liability for a public employee's conduct in the execution or enforcement of any law or for injury proximately caused by the employee's failure to furnish or obtain medical care for a prisoner in his custody, unless such act or omission is willful or wanton.  *See* 745 ILCS 10/2-202, 4-105.  Because of the exception for willful and wanton conduct, application of immunity often involves a fact-based inquiry.  *Murray v. Chicago Youth Ctr.*, 224 Ill. 2d 213, 245, 864 N.E.2d 176, 194 (2007) ("[I]n general, whether conduct is 'willful and wanton' is ultimately a question of fact for the jury.").

The TIA defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.  "Willful and wanton conduct consists of more than mere inadvertence, incompetence, or unskillfulness."  *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1081 (7th Cir. 1998).  A person's conduct is willful and wanton if "he ignores known or plainly observable dangerous conditions and does something that will naturally and probably result in injury to another."  *Id.*

Polo alleges behavior that plausibly could be considered to amount to willful and wanton conduct.  Although "there is no separate and independent tort of willful and wanton conduct," *Krywin v. Chicago Transit Auth.*, 238 Ill. 2d 215, 235, 938 N.E.2d 440, 452 (2010), the substance of what Polo has alleged could be found to fit squarely within the TIA's definition.  Specifically, she has alleged the defendant doctors did not provide

Paredes with the prescription necessary to obtain a wheelchair for over twenty days even though they knew he could not get around without one. Polo has also alleged that correctional officers refused to assist Paredes with walking and forced him to walk unassisted despite his condition, even though he and other inmates asked them to provide him with a wheelchair. Polo has further alleged that at least one correctional officer exclaimed, "He ain't getting no wheelchair," a statement that—if it was made—arguably suggests that the officer knew Paredes needed a wheelchair but nonetheless refused to give him one. Polo's allegations, if proven, could be found to constitute willful and wanton conduct. Dismissal based on immunity under the TIA is therefore inappropriate.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss [dkt. no. 33]. Defendants are to answer all remaining claims within fourteen days of this order.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 10, 2016