IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXANDRA PAREDES, individually and as Independent Administrator of the Estate of DANIEL PAREDES, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>COOK COUNTY, THOMAS J. DART, RONALD F. LEVDORA, MD, ALI M. NAGIB, MD, CORRECTIONAL OFFICER STARKS, CORRECTIONAL OFFICER RAMIREZ, and JOHN DOES,<br><br>Defendants. | Case No. 15 C 3644 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Daniel Paredes died in the custody of the Cook County Department of Corrections in May 2014. Gina Polo, Paredes' wife and the independent administrator of his estate, sued Cook County, Sheriff Thomas Dart, two correctional officers, two physicians, and unnamed defendants identified as "John Does" in a 16-count amended complaint, alleging that their unlawful conduct led to Paredes' death. She asserted constitutional claims under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); state-law tort claims under the Illinois wrongful death statute, 740 ILCS 180/1; and claims for indemnification under 745 ILCS 10/9-102. The current named plaintiff, Alexandra Paredes, was substituted for Polo in May 2017 upon Polo's death. The Court will refer to her as the plaintiff to

distinguish her from Daniel Paredes, to whom the Court will refer as Paredes. The defendants have moved for summary judgment on all of the plaintiff's claims. They argue that the plaintiff cannot meet her burden of proving causation on any of her claims, and that even if she could do that, she cannot demonstrate the type of misconduct necessary to prove her claims. For the reasons stated below, the Court grants the defendants' motions.

**Background**

The following facts are undisputed except where otherwise noted. Daniel Paredes was arrested on a charge of unlawful delivery of a controlled substance on April 3, 2014. Until his death on May 14, 2014, he remained in the custody of the Cook County Department of Corrections. On April 6, Paredes underwent two intake assessments. During these assessments, department staff learned that Paredes had a history of diabetes, high blood pressure, and high cholesterol, and that he had previously suffered a stroke. The parties appear to disagree whether staff learned of a previous heart attack during the assessments or whether that information arose only from the post-mortem medical examination.

Paredes faced mobility challenges as a result of his previous stroke. Dr. Ronald Levdora, who conducted the second intake assessment, noted that Paredes typically used a cane to walk and prescribed one for use in the jail. Paredes also gave Dr. Levdora a list of eight medications that Paredes reported being prescribed before his arrest. Dr. Levdora prescribed six of the medications on the list and prescribed substitutes for the remaining two. The plaintiff admits that Paredes never asked Dr. Levdora for a wheelchair during this intake assessment and reported being "fine" with a

2

cane.  Defs'. LR 56.1 Stat. ¶ 24.

Paredes was subsequently treated by Dr. Nagib Ali, who was assigned to the division where Paredes was housed at the jail.  During his first visit with Dr. Ali on April 21, Paredes requested a wheelchair.  Dr. Ali agreed and prescribed Paredes a wheelchair for long-distance use.  Dr. Ali also noted that Paredes had stage 3 chronic kidney disease and accordingly made minor modifications to his medication regimen.  Parades saw Dr. Ali again on April 29, at which point Dr. Ali noted marked improvement in Paredes' kidney function.

Throughout his incarceration, Parades was housed in Division 2, M House.  Correctional officers Starks and Ramirez, also named defendants, worked the second shift in Paredes' assigned house.  The two officers are accused of ignoring Paredes' and other inmates' requests to give Paredes access to his prescribed wheelchair.  The defendants deny Starks and Ramirez did any such thing.  They assert—and the plaintiff concedes—that neither officer ever saw Paredes in a wheelchair or was told that he had previously suffered heart attack, stroke, or other physical disabilities.  The defendants admit, however, that Starks and Ramirez noticed that Paredes walked with a limp and that the department required officers to remain apprised of inmates' prescriptions for auxiliary aids like wheelchairs.

On May 14, 2014 Paredes' attorney appeared at a bond hearing before Judge Geary Kull.  The attorney told Judge Kull that Paredes had been refused use of a wheelchair and that he was therefore essentially confined to his cell.  As a result, Judge Kull reduced Paredes' bond.  Paredes' wife, Gina Polo, posted the bond later the same day.

3

That evening, Paredes left Division 2 on his way to the discharge facility using his cane. He was picked up in a wheelchair by correctional officer Joseph Land to make most of the journey. The plaintiff admits that Land wheeled Paredes all the way from Division 2 to the discharge area in Division 5. The only time Paredes left the wheelchair was to change his clothes. Paredes did not indicate to Land or anyone else that he was experiencing chest pains or any other symptoms during the transfer.

Upon arrival at Division 5, Paredes stood up and walked into the release staging area called the "bullpen." *Id.* ¶¶ 63-65. According to an incident report prepared by the Sheriff's Office—which both the plaintiff and defendants cite as evidence of the timeline—Paredes arrived at the bullpen at 9:57 PM. Correctional officer Brian Peterson was working near the bullpen and walked past it several times in the minutes after Paredes' arrival. On his fourth pass, at about 10:05 PM, Peterson noticed Paredes slumped against the wall. Peterson called medical staff and began CPR at 10:06 PM. Resuscitation efforts using a defibrillator began at 10:08 PM. Paramedics were on the scene by 10:15 PM, Chicago Fire Department (CFD) medics arrived at 10:22PM, and a CFD ambulance arrived at 10:32 PM. Paredes was transported to St. Anthony Hospital around 10:42 PM and was eventually pronounced dead.

The Cook County medical examiner concluded that the cause of Paredes' death was coronary atherosclerosis, with hypertensive cardiovascular disease noted as a significant contributing condition. The plaintiff asserts that the defendants' refusal to grant Paredes access to the wheelchair he was prescribed during his transfer to the discharge facility, among other actions, led to his death. (It is somewhat unclear when precisely during the process Paredes was refused a wheelchair, as the parties agree

4

that he was wheeled by Land from Division 2 to the discharge bullpen in Division 5.) For their part, the defendants offer the testimony of an expert who opines that Paredes suffered sudden cardiac death as a result of an arrhythmia caused by a previous a myocardial infarction. The medical examiner's report does not include any evidence, in the expert's view, that Paredes suffered an acute stroke or heart attack that caused his death. Ultimately, the defendants' expert concluded that Paredes died suddenly with no new symptoms and that his access to a wheelchair had no impact on his likelihood of survival.

## Discussion

Cook County, Sheriff Dart, correctional officers Ramirez and Starks, and Drs. Levdora and Ali have moved for summary judgment on all of the plaintiff's claims. In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018). Summary judgment is proper where there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The plaintiff presents two principal theories of liability. First, in counts 1, 3, 5, 7, and 9, she argues that Paredes was deprived of use of a wheelchair and of adequate medical care in violation of the Fourteenth Amendment. The Fourteenth Amendment protects pre-trial detainees like Paredes from inhumane conditions of confinement including inadequate medical care. *See Miranda v. County of Lake*, 900 F.3d 335, 347, 350 (7th Cir. 2018). To prevail, a plaintiff must demonstrate that (1) the defendants

5

"acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendants' conduct was objectively unreasonable. *Id.* at 353-54.[1] She must also present "verifying medical evidence that the delay in medical care caused some degree of harm." *Id.* at 347 (internal quotation marks omitted). Typically, "[p]roximate cause is a question to be decided by a jury." *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010). But where a plaintiff offers "no evidence" that the defendant's conduct caused or "exacerbated an injury[,] summary judgment [may] be granted on the issue of causation." *Id.*

The plaintiff's second theory of liability—which anchors counts 2, 4, 6, 8, 10, 12, and 15—arises under state law. The Illinois wrongful death statute allows a decedent's estate to sue a party whose alleged "wrongful act, neglect or default" caused the death. 740 ILCS 180/1. A public employee is protected from wrongful death liability by the Illinois Tort Immunity Act unless her "act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. And the plaintiff must again demonstrate causation. *See DeMyrick v. Guest Quarters Suite Hotels*, 944 F. Supp. 661, 666 (N.D. Ill. 1996) (citing *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 349–50 (7th Cir. 1996)). "Proximate cause is a question of fact for the jury unless there is no material issue regarding the matter or only one conclusion is clearly evident." *Williams v. Univ. of Chi. Hosps.*, 179 Ill. 2d 80, 88, 688 N.E.2d 130, 134 (1997).

The defendants argue that the plaintiff has not offered evidence of causation that would satisfy either standard. They point to their expert's testimony that none of the

---

[1] *Miranda*, which modified this standard, was decided after the briefing on this motion was completed. *See Miranda*, 900 F.3d at 350; *McWilliams v. Cook County*, No. 15 C 53, 2018 WL 3970145, at *5-6 (N.D. Ill. Aug. 20, 2018) (discussing *Miranda*'s application to an inadequate-medical-care claim).

6

events that immediately preceded Paredes' death precipitated or contributed to it. They also note that the plaintiff's expert does not testify on the issue of causation, but rather focuses his testimony on criticizing the defendants' expert. They imply that, without expert testimony, the plaintiff's claims fail.

The defendants overstate their position. Expert testimony is not always required to sustain claims like the plaintiff's. *See, e.g.*, *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010) ("Expert testimony is not always necessary to establish causation."). Although a plaintiff must offer "verifying medical evidence" to support a section 1983 action, that evidence may come in the form of "medical records alone" if the causal relationship is sufficiently clear. *Miranda*, 900 F.3d at 347. In cases where such evidence has been found sufficient, however, the causal relationship was very straightforward. In *Miranda*, for instance, the defendants failed to transfer a hunger-striking inmate to the hospital, resulting in her death by starvation and dehydration. *See id.* And in *Gayton*, the defendant failed to provide emergency medical care to treat an inmate's chest pain "for many hours" after the pain was reported. *Gayton*, 593 F.3d at 625. The Seventh Circuit concluded that the delay in care obviously caused the plaintiff to endure "needless suffering for no reason." *Id.*; *see also Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). In other words, the defendants are wrong to suggest that an expert is always required, and medical records (or perhaps other evidence) alone may be enough where the causal relationship is particularly obvious.

This, however, is not such a case. The Court agrees with the defendants that the plaintiff has failed to produce evidence from which a reasonable jury could conclude that the defendants' actions caused Paredes' injuries. Indeed, the plaintiff offers no

evidence of causation beyond a bare temporal sequence. She suggests that because Paredes died soon after being transferred to the discharge bullpen, a reasonable jury could infer that something that occurred during the transfer process—perhaps Paredes being forced to walk some distance—must have caused his death. But, even setting aside the plaintiff's concession that Paredes was transferred by wheelchair, this sort of argument grounded only in a temporal sequence is insufficient to survive summary judgment, at least in a case like this one involving a physical injury with other potential causes. *See Abebe v. Thermo Fisher Sci., Inc.*, 711 F. App'x 341, 342 (7th Cir. 2018) ("[P]ost hoc ergo propter hoc is not a reliable means of showing causation."); *Glatt v. Chi. Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996) (discussing the insufficiency of causation arguments based on "post hoc ergo propter hoc: the [action] followed the [purported cause], therefore must have been caused by it").

The plaintiff also alleges that department personnel unduly delayed treatment when Paredes was discovered unresponsive in the bullpen. But, as discussed above, uncontested evidence suggests that there was no such delay, and there is thus no basis to infer that a delay caused any injury to Paredes. *Cf. Gayton*, 593 F.3d at 625 (finding that a causal relationship could be inferred where there was evidence that medical care was delayed "for many hours").

Both section 1983 and the Illinois wrongful death statute require evidence of causation to survive summary judgment. Because the plaintiff has produced no evidence of causation, there is no basis for a reasonable jury to find for her on this key element of her claims. The Court therefore grants defendants' motion for summary judgment on all of the plaintiff's section 1983 claims against the individual defendants

8

and her wrongful death claims.

The plaintiff's related claims under *Monell* (counts 11 and 14) fare no better. Under *Monell*, a plaintiff may sue a governmental entity when an "official policy, widespread custom, or action by an official with policy-making authority" causes a constitutional violation. *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). *Monell* requires the plaintiff to demonstrate that the alleged policy, custom, or action "was the 'moving force' behind [the] constitutional injury." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)). Given that the plaintiff has produced no evidence of causation, she has clearly failed to meet the moving-force requirement necessary to avoid summary judgment on these claims.

This leaves counts 13 and 16, the plaintiff's claims for indemnification under 745 ILCS 10/9-102. *See generally Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 636 (7th Cir. 2009). Because the Court has granted the motion for summary judgment on the underlying substantive claims, the plaintiff's indemnification counts also fail.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motions for summary judgment [dkt. nos. 131, 133] and directs the Clerk to enter judgment in favor of defendants and against plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 12, 2018